IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Argonaut Insurance Company, | : | CIVIL ACTION |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| Century Indemnity Company, as Successor | : | |
| To Insurance Company of North America, | : | |
| | : | |
| Respondent. | : | NO. 05-5355 |

**MEMORANDUM AND ORDER**

Gene E.K. Pratter, J.                                                                                           August 25, 2006

Two sophisticated insurance companies, apparently engaged in an arbitrable dispute concerning their respective duties, obligations and entitlements under various reinsurance contracts going back in part almost 40 years, have chosen to do battle first in a procedural and possibly tactical skirmish in this Court.

Argonaut Insurance Company ("Argonaut") is the reinsurer of the predecessor of Century Indemnity Co. ("Century"). In the spring of 2005, Century made three demands upon Argonaut to arbitrate Century's claims that Argonaut was obliged to make certain payments to Century pursuant to the reinsurance contracts between Argonaut and Century's predecessor. The reinsurance contracts call for disputes between the parties to be resolved by arbitration. It appears that after making the initial three demands - - to each of which Argonaut allegedly responded in accordance with the provisions of the arbitration requirements attendant to the parties' agreement - - instead of naming its arbitrator(s), (or perhaps because it neglected to do so

timely) Century then sent Argonaut a demand seeking to arbitrate 16 additional claims in a single consolidated proceeding along with the original three claims.  The 19 various claims between Century and Argonaut relate to different underlying policyholders, different underlying liability insurance policies, different liability payments by Century and different reinsurance contract years.  While the reinsurance contract ostensibly at issue in connection with the initial demands for arbitration calls for arbitration to be held nominally in New York City "unless some other location is mutually agreed upon by [the parties]," subsequent years' continuation reinsurance contracts specified that arbitrations of disputes between the companies were to be held in the city "in which [Century's] Head Office is located unless some other place is mutually agreed upon..."[1]

     Argonaut refused to proceed on the "consolidated" basis and, instead, filed in this Court a "Petition To Compel Arbitration And Dismiss Arbitration" by which Argonaut seeks to have this Court (1) order Century to arbitrate the three initial claims separately as initially demanded, (2) declare that Century may not unilaterally consolidate arbitration proceedings, (3) dismiss the consolidated arbitration proceeding Century ostensibly commenced and (4) declare that Century

---

[1] The Court's decision in this Memorandum and Order is limited strictly to the narrow issue before it, namely, Century's pending motion to dismiss on grounds of improper venue Argonaut's Petition described infra.  Argonaut's Petition includes as its Exhibit A only that reinsurance contract that references the New York forum selection clause.  In the course of the briefing to the Court and during oral argument, the parties made reference to (and presented copies to the Court) the alternate "Home Office" forum selection clause(s) contained in subsequent reinsurance contracts between the companies.  Although those subsequent contracts and those alternate forum selection clauses may have future relevance to this dispute, for immediate purposes the Court places no significance on them other than as an introduction to the fact that Century's "Home Office" is in Philadelphia, a geographic fact that has some significance to the narrow issue presently before the Court.  The Court also notes that in each case, the arbitration clauses anticipated some potential flexibility with respect to the location for arbitration activities.

has waived its rights to appoint an arbitrator for the three initial claims. The Petition does not purport to specify exactly <u>where</u> these various arbitrations should take place if so ordered by the Court. Century has moved to dismiss Argonaut's Petition on the ground that venue for the Petition is improper in this District. It is only this venue issue that is presently before the Court for resolution at this time.[2]

Argonaut originally contended - - erroneously - - that this Court has jurisdiction to address its Petition because the Federal Arbitration Act, 9 U.S.C. §§ 1 <u>et. seq</u>, confers subject matter jurisdiction upon the Court. It does not. <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 25 (1983); <u>Painewebber Inc. v. Faragalli</u>, 61 F.3d 1063, 1066 (3rd Cir. 1995). However, the Court is satisfied that the Petition nonetheless sufficiently supports the Court's exercise of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the Petition avers that Argonaut (a California corporation with its principal place of business in that state) and Century (a Pennsylvania corporation with its principal place of business in this Commonwealth) are citizens of different states and the aggregate amount presently in controversy between them exceeds the requisite jurisdictional amount.[3] Argonaut further contends that venue is proper in

---

[2]The Court recognizes that it was initially tempting to try to get to the heart of the matter in order to facilitate a more expeditious resolution to this dispute and avoid perhaps ultimately meaningless litigation in one court when another equally, or more, appropriate court may well have to resolve some or all of the parties' disputes, in large part due to the initially puzzling nature of the parties' procedural dispute as compared to the underlying dispute and the circumstance that the parties both presented the Court with too much extraneous and not enough pertinent information in their written and oral submissions. However, after reassessing the precise procedural posture of this case, the Court has concluded that it must resist the pull of any desire for judicial economy and efficiency and await the natural maturation processes of the dispute to unfold.

[3]The Court accepts that, as Century points out, there is considerable irony in Argonaut's aversion to a consolidated arbitration while needing to "consolidate" various of the claims in

this District pursuant to the general venue statute, 28 U.S.C. § 1391, because Century's principal place of business is located here.

By its motion, Century argues that Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, must be interpreted to limit a federal court's consideration of what venue is proper when parties resort to judicial intervention concerning arbitration if their arbitration agreement contains a forum selection clause. As the movant, Century has the burden of proving improper venue. Myers v. Am. Dental Ass'n., 695 F.2d 716, 724-25 (3d Cir. 1982). In order to try to sustain its burden, Century understandably, but prematurely, relies upon cases that may be more appropriate if the Court must at some later point in this litigation venture into the "perplexing dilemma" noted by the Third Circuit Court of Appeals in Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc., 499 F.2d 1391, 1394 (3d Cir. 1974). That dilemma has bedeviled a host of courts that have tried to reconcile the apparent analytical tension between the first portion of § 4 of the FAA which permits a party to an arbitration agreement to request, and a federal court to issue, an order compelling arbitration "in the manner provided for in the agreement," and the second portion of the same statutory provision which states that the arbitration "shall be within the

---

order to argue for its satisfaction of the jurisdictional amount requirements of 28 U.S.C. § 1332(a). However, this is not the first case to be fraught with irony, and it will not be the last. Indeed, this single case has several instances of irony, and it is only in its relative infancy. A plaintiff may aggregate its claims against a single defendant in order to calculate the amount in controversy between them for jurisdictional purposes. Snyder v. Harris, 394 U.S. 332, 335 (1969); Suber v. Chrysler Corp., 104 F.3d 578 (3rd Cir. 1997). There is no caveat that a plaintiff who does so must therefore accept that each individual claim be subject to the same evidentiary support for example or ultimate relief as long as the success of one claim would not cancel out another claim used for purposes of calculating the jurisdictional amount.

district in which the petition for an order directing such arbitration is filed."[4]  Indeed, even at this structural framing stage of this dispute, there is some suggestion that Argonaut would have this Court resort to simply hammering a square peg into a round hole because the tools that might otherwise be most appropriate for such fine carpentry, i.e., the parties' agreements and conduct, and the governing statutory and case law, are not sufficiently honed to construct the edifice Argonaut has specified.  Be that as it may need to be addressed in the future, at this moment, the Court finds sufficient guidance from the United States Supreme Court's opinion in Cortez Byrd Chips, Inc. v. Bill Halbert Construction Co., 529 U.S. 193 (2000), to deny Century's motion as framed because Century's motion necessarily would require the Court to interpret Section 4 of the FAA as trumping or foreclosing, for purposes of considering venue, the general venue statute of 28 U.S.C. § 1391.  In the course of analyzing the venue provisions in Sections 10 and 11 of the FAA in Cortez Byrd, the Supreme Court characterized Section 4's "first part" venue provision as "even more obviously permissive" language than §§ 10 and 11.  Cortez Byrd, 529 U.S. at 199.  The Court then observed that "[t]he enactment of the special venue provisions in the Federal Arbitration Act thus had an obviously liberalizing effect, undiminished by any suggestion, textual or otherwise, that Congress meant simultaneously to foreclose a suit where the defendant resided [i.e., pursuant to the general venue provisions in Title 28 of the U.S. Code]."  A propos of the issue here, the Court further observed that '[t]he most convenient forum for a defendant is normally the forum of residence, and it would take a very powerful reason ever to suggest that

---

[4] As suggested in footnote 2, supra, the virtual inevitability of wading into that quagmire has already manifested itself in the parties' briefing and even in the Court's questioning of counsel during oral argument.  The parties have concentrated their efforts on that issue and will certainly need to do so again as they and the Court move ahead to consider the merits of the Petition and the possible limits on this Court's authority to grant any or all of the relief requested.

Congress would have meant to eliminate that venue for post-arbitration disputes."[5] Id. Thus, it would seem that the Supreme Court has implicitly embraced the notion that the existence of "obviously permissive" venue language in §4 of the FAA ought not remove the option of invoking the general venue statute. Certainly, Century has not suggested a reason - - powerful or otherwise - - not to apply the same reasoning to pre-arbitration disputes of the nature of at least portions of the present one.[6]

Although Cortez Byrd is not fully determinative of the present issue, it does convince the Court here that on the very narrow issue at hand, where there has been no precedential statement of the law on this point from our court of appeals,[7] Argonaut's compliance with the general venue statue is sufficient for this action to proceed to its next logical step. Accordingly, Century will be ordered to file its answer to the Petition as a result of which the Court fully expects to see

---

[5] It is another of the aforementioned ironies of this case that it is Century that is arguing against legal proceedings occurring in its "forum of residence."

[6] The Court notes that the Tenth Circuit Court of Appeals, in Ansari v. Qwest Communications Corp., 414 F.3d 1214 (10th Cir. 2005), declined to read Cortez Byrd in this fashion. However, the Ansari court chose to separate itself from the Ninth Circuit Court of Appeals' decision in Textile Unlimited, Inc. v. A. Bah & Co., 240 F.3d 781 (9th Cir. 2001), and in so doing adopted an especially narrow reading of Cortez Byrd. Suffice it to say, this Court is eschewing adherence to either the Tenth or the Ninth Circuits appellate courts' decisions.

[7] In a recent unpublished opinion, the Third Circuit Court of Appeals in Port Erie Plastics, Inc. v. Uptown Nails, LLC, 173 Fed. Appx. 123, 128 (3d Cir. March 10, 2006), after reviewing the prior decisions of the district courts in this circuit that have addressed the practical implications of Section 4 of the Federal Arbitration Act, implicitly upheld a district court's denial of a motion to transfer venue by affirming the trial court's decision to compel arbitration in its district even though the parties' arbitration agreement called for the American Arbitration Association to select the locale. The court concluded that the parties' agreement would not be interpreted with such significance to have the American Arbitration Act determine venue. Port Erie Plastics, at 127. Although Port Erie Plastics is neither directly on point nor precedential, it is suggestive of our appellate court's reluctance to allow arbitration agreements in tandem with Section 4 of the Federal Arbitration Act to supplant conventional venue determinations.

once again a number of the arguments the parties' advocates have already ably, albeit prematurely, advanced.  An Order consistent with this Memorandum follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
*UNITED STATES DISTRICT JUDGE*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Argonaut Insurance Company, | : | CIVIL ACTION |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| Century Indemnity Company, as Successor | : | |
| To Insurance Company of North America, | : | |
| | : | |
| Respondent. | : | NO. 05-5355 |

**ORDER**

Gene E.K. Pratter, J.                                                                                              August 25, 2006

AND NOW, this 25th day of August, 2006, upon consideration of Century Indemnity Company's ("Century") Motion to Dismiss Argonaut Insurances Company's ("Argonaut") Petition to Compel Arbitration and Dismiss Arbitration (Docket No. 4), and the parties responses, replies, and supplemental briefs (Docket Nos. 7,8,10,17 and 19), IT IS HEREBY ORDERED that the Motion is DENIED, and Century is directed to file its response to Argonaut's Petition within 21 days of the date of this Order.  IT IS FURTHER ORDERED that a status conference shall be held on October 19, at 4:00 p.m.

BY THE COURT:

S/Gene E.K. Pratter
GENE E. K. PRATTER
*UNITED STATES DISTRICT JUDGE*