IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARGONAUT INSURANCE COMPANY, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| CENTURY INDEMNITY COMPANY, | : | |
| AS SUCCESSOR TO INSURANCE COMPANY | : | |
| OF NORTH AMERICA, | : | |
| Respondent. | : | NO. 05-5355 |

## MEMORANDUM

GENE E.K. PRATTER, J.                                                                                     SEPTEMBER 5, 2007

Argonaut Insurance Company has filed a petition to compel Century Indemnity Company to arbitrate three insurance claims each in separate arbitration proceedings, and to dismiss the consolidated arbitration proceeding sought by Century. For its part, Century has cross-petitioned to compel Argonaut to participate in a single consolidated arbitration of the three claims, along with sixteen of Century's other pending claims. The parties have agreed that in accordance with a recent case, Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co., 489 F.3d 580 (3d Cir. 2007), the choice between separate or consolidated proceedings is one of arbitral procedure to be decided by the arbitration panel itself, and, thus, they acknowledge that the resolution of the matter of consolidation must be made within the arbitration realm. (Argonaut's Resp. to Cross Pet. 2.) The narrow issue remaining before the Court is which of the partially formed three-member arbitration panels is the appropriate body to determine the issue of consolidation.

**I.     BACKGROUND**

Century is the successor in interest to liability insurance policies issued by the Insurance Company of North America during the 1950s-1980s. In exchange for a share of the premium, Argonaut's predecessor, Guaranty Reinsurance Company, reinsured Century under various reinsurance agreements under the parties' the "Global Slip Treaty" program. One of such agreements is the Blanket Excess of Loss Cover Agreement, executed in 1968.

Between April and May of 2005, Century sent four different demands for arbitration to Argonaut. Each of the first three demands pertained to a distinct claim arising under and governed by the 1968 Agreement. Century's fourth arbitration demand pertained to a consolidated dispute of the claims that are the subject of the first three demands, along with sixteen other disputed claims arising under various reinsurance agreements, all of which are part of the Global Slip Treaty.

The 1968 Agreement contains an arbitration clause that subjects disputes between Argonaut and Century to binding arbitration. The clause provides:

> If any dispute shall arise between the GROUP and the REINSURERS with reference to the interpretation of this CONTRACT of their rights with respect to any transaction involved, the dispute shall be referred to three arbitrators, one to be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within thirty (30) days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate two arbitrators, who shall choose the third. Each party shall submit its case to the arbitrators within thirty (30) days of the appointment of the arbitrators. The arbitrators shall consider this CONTRACT an honorable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law . . . Any such arbitration shall take place in New York, New York, unless some other location is mutually agreed upon by the GROUP and the REINSURERS.

(Petition, Ex. A at Art. 22.)

Century also submitted various other excerpts from the reinsurance agreements that it could locate in its files, each of which covers various of the claims listed in Century's fourth arbitration demand. (Def.'s Resp. to Mot. to Dismiss, Exs. 1-4.) Each of the contracts contains an arbitration clause that is slightly different from the 1968 Agreement, however, the differences among the clauses are not relevant to resolution of this matter.

Century provided written notice of its first two arbitration demands, simultaneously, on April 5, 2005. In the first demand, Century sought reimbursement for payments allegedly made for asbestos premises claims against its insured, Allegheny Power. The second demand pertained to monies paid to another insured, Kraft Foods, Inc., for environmental pollution claims made against it. On April 28, 2005, Argonaut requested that Century appoint its designated arbitrator, and on May 3, 2005, Argonaut appointed its own arbitrators for the Kraft and Allegheny arbitrations.

On May 5, 2005, Century sent a third demand for arbitration, arising out of a dispute over the amount sought by Century for payments Century made for asbestos products claims against its insured, Kentile Floors. The next day, Argonaut demanded that Century appoint its designated arbitrator for the Kentile claim, and on May 27, 2005, Argonaut appointed its own arbitrator to preside over the merits of that dispute.

Three weeks later, and prior to the expiration of the 30-day time period during which Century was to appoint its arbitrator for each of the three separate proceedings, Century issued a fourth arbitration demand to Argonaut. Century attached to the demand a list of losses placed at issue, which included the three losses that were the subjects of the three prior arbitration

demands. (Pet., Ex. F.)

Thereafter, on June 14, 2005, Argonaut notified Century that it had exercised its right to appoint a second arbitrator for each of the first three arbitration proceedings, inasmuch as Century had not timely exercised its right to choose its own arbitrator for those proceedings. On June 20, 2005,[1] Argonaut responded to the May 25 arbitration demand by objecting to the consolidation of disputed claims. Argonaut expressed its view that despite Century's inclusion of the Kraft, Allegheny and Kentile claims in the May 25 demand, this fourth demand did not supplant its predecessors. Nevertheless, according to the arbitration clause of the 1968 Agreement, Argonaut named an arbitrator to become part of the panel for "each of the arbitrations encompassed within [the] May 25, 2005 demand." (Resp. to Pet., Ex. 3.)

Upon receipt of Argonaut's June 20 letter, Century immediately informed Argonaut that the May 25, 2005 demand, i.e., the fourth demand, by incorporating the claims that were subjects of the prior three demands, had "superceded" the prior demands. (Resp. To Pet., Ex. 2.) Century's letter continued: "to avoid any confusion going forward, please be advised that Century hereby withdraws its two arbitration demands dated April 5 and its one demand dated May 5." Id. On July 19, 2005, Century appointed its arbitrator for the May 25 panel.

Having created a rather tangled web of arbitration demands, leading to multiple incomplete arbitration panels, and now, having endeavored to invoke the subject matter jurisdiction of this Court to unravel this thicket, the parties now await the Court's decision before

---

[1]This letter is dated June 21, 2005. However, Century's correspondence in response to the letter, which itself is dated June 20, 2005, indicates that Argonaut's letter was incorrectly dated June 21, 2005 when it was sent and received on June 20, 2005. The precise date of this letter is not relevant for the purposes of this Memorandum.

they will undertake any businesslike handling of their disputes.  The Court concludes that it lacks the authority to dismiss any of the arbitrations, and the matter of whether and at what time Century withdrew its arbitration demands is a question of arbitral procedure, that is, for the arbitrators to determine, not this Court.  Therefore, the Court will compel all four of the arbitrations to proceed so that the parties and the arbitrators can resolve this matter as the parties, given their initial expression of preference for arbitration rather than litigation, presumably preferred.

**II.     LEGAL STANDARD**

Motions to compel arbitration are governed under summary judgment standard set forth in Fed. R. Civ. P. 56©.  InterDigital Commc'ns Corp. v. Fed. Ins. Co., 392 F. Supp. 2d 707, 711 (E.D. Pa. 2005).  Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it is] entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©.

In considering a motion to compel arbitration, the Court must consider all of the non-moving party's evidence and construe all reasonable inferences in the light most favorable to the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Versarge v. Twp. of Clinton N.J., 984 F.2d 1359, 1361 (3d Cir. 1993).  The Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249.

**III.    DISCUSSION**

Century and Argonaut have labored mightily both in, and prior to this litigation, over the primary issue of consolidation.  The parties having now agreed to remove this central issue from


the Court's consideration, the Court is left to resolve a subsidiary question which is not easily resolved as an independent matter.  The determination of which arbitration panel ought to be charged with the task of answering the threshold question of consolidation implicates the Court's authority under the Federal Arbitration Act, 9 U.S.C. § 4, as well as the fine line distinctions between tasks that rest solely in the purview of the arbitration panel itself and those that are gateway matters resolved by the Court.

The parties point to no authority, nor is the Court aware of any authority, where a court has been charged with the single task of choosing among arbitration panels strategically and partially formed pursuant to an arbitration agreement or agreements.  Both Argonaut and Century advocate for a "first in time" rule, that is, the parties agree that the first panel that was "completely" formed must decide the threshold question of consolidation.

The parties both cite Avon Products v. Int'l Union, 386 F.2d 651 (8th Cir. 1967), in support of the rule.  In Avon, a labor union sued to compel arbitration of five separate employee-union member grievances.  The court determined that the parties had entered into a binding arbitration agreement, and that the agreement covered all of the disputes.  The court further concluded that the question of whether all of the pending grievances should be consolidated before one arbitrator, or separated into individual arbitration proceedings, was a question properly decided by the "first arbitrator selected." Id. at 657.  In so holding, the court did not explain its choice of the first arbitrator instead of the arbitrators appointed in connection with the other grievances.  Thus, Avon is not particularly helpful here.

Of course, Century and Argonaut disagree as to which of the panels was the first in time to be formed.  Century asserts that the panel formed as a result of its May 25 demand was the

first, and only, panel to be completely formed, inasmuch as Century declared that the May 25 demand revoked and nullified the prior demands, as well as the partial panels assembled pursuant to those earlier demands.  Century also views the May 25 panel as "complete", apparently on the grounds of equity, inasmuch as both Argonaut and Century have selected an arbitrator to that panel, while the other three panels consist of Argonaut-appointed arbitrators only.

Century contends that the issuance of a demand for arbitration is akin to the filing of a complaint in federal court, and argues that as the "master of the complaint" it may withdraw the action it commenced at any time prior to when a defendant files an answer or a motion for summary judgment.  (Century Br. 16) (citing 2 Commercial Arbitration § 47:5) (stating that there is no Commercial Arbitration Rule governing or referencing voluntary withdrawal of a claim, but noting that this "procedural option is referenced under Processing Fees" ).  On this basis, Century submits that by serving its May 25 demand it "voluntarily dismissed" its previous demands.

Even assuming the analogy is appropriate, Century's reasoning is unavailing.  If the Court were to apply the federal pleading rules to this scenario,  it would be logical to conclude that Argonaut "answered" the April 5 and May 5 arbitration demands either by serving its responsive demand that Century appoint an arbitrator, or by acting to select its arbitrator(s) for the proceeding(s).  It is unclear what else might constitute the analogous "answer" to an arbitration demand.  The Court does not accept, as Century argues, that only a "cross demand" for arbitration would constitute responsive action by Argonaut.  Thus, by adopting for analytical purposes, Century's analogy, if an arbitration demand may be seen to operate as a complaint, at this stage, after Argonaut has acted on the demands, Century would be required to seek leave of court (or the panel), or the stipulation of Argonaut to withdraw, or amend, its earlier demands.

See Fed. R. Civ. P. 41.  Century has done neither.

Century's citation to the Rules of Commercial Arbitration in constructing its argument raises an important point, that is, the distinction between the role of the Court, and the role of the arbitrator in dispute resolution.  Like the issue of whether or not the disputed claims among these parties is properly consolidated within a single arbitration, the issue of whether Century's consolidated demand superceded its previous demands, or whether it may or has effectively withdrawn its earlier demands, is a matter of ***arbitral procedure*** for the arbitrator, and not a question of  ***arbitrability*** for the Court.

In Certain Underwriters at Lloyd's London, 489 F.2d at 584-85, the court of appeals analyzed a trio of recent Supreme Court cases in order to give greater understanding of the respective roles of the courts and the arbitrators.  Starting with the principle that the arbitration of disputes arises out of contract, if parties consent to arbitration, the arbitrators have the authority only to resolve the specific issues the parties have agreed to submit to arbitration.  Id. (citing Metromedia Energy, Inc. v. Enserch Energy Servs., Inc., 409 F.3d 574, 578 (3d Cir. 2005); Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 54 (3d Cir. 2001)). The question of whether the parties have consented in the first instance to arbitration, at all, and specifically, whether they have consented to arbitrate a particular substantive matter, are examples of the "narrow circumstances" that present "gateway" questions of *arbitrability* for the Court.  Id. at 585 (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-4 (2002)[2] (finding that gateway questions are those "such as a dispute about "whether the parties are bound

---

[2]This is so unless the parties "clearly and unmistakably provide otherwise."  Id. (quoting Howsam, 537 U.S. at 83).

by a given arbitration clause" or whether "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.")

Conversely, "[m]atters that concern 'neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties' will not fall within this 'narrow exception.'" Id. (citing Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452 (2003)). In Certain Underwriters, the court of appeals concluded that the issue of whether distinct disputes regarding particular insurance claims may be consolidated before a single arbitration panel fell outside the "narrow circumstances" of judicial resolution, and instead was one for the arbitration panel itself.[3]

Likewise, here, neither Argonaut nor Century disputes the validity of the pertinent arbitration clause (or clauses, as the case may be), nor do they dispute whether the particular insurance claims submitted to arbitration are properly brought before an arbitration panel for resolution. Instead, they dispute whether and which of the panels has or have been fully formed, a question that would require the Court to determine whether or not Century effectively withdrew its first three arbitration demands, or whether the fourth demand superceded the prior demands. The question of whether withdrawal is permitted, at what point, and in what manner, is a question of procedure arising out of the process of arbitration and not a question of arbitrability. As indicated by Century's citation to the Commercial Arbitration Rules, these Rules are likely, at

---

[3]None of the arbitration clauses in the various reinsurance contracts, including the 1968 contracts and those contracts submitted as Exhibits by Century subject the particular qeustion before the court, that is, whether and how an arbitration demand may be withdrawn, or, more broadly, which panel ought to proceed when multiple panels have been commenced, to resolution by a Court and not by an arbitrator. Where an arbitration clause designates that a particular question will be resolved by a court, even if the matter is not a gateway question, the Court may resolve the question.

the very least, to be a starting point for the resolution of the question, a fact that supports the categorization of this question as one of procedure for the arbitration panel itself.

Having found that this is the case, and the parties having resolved to use this forum to put an end to their gamesmanship, the Court is somewhat hamstrung as to the result that must ensue. An order to compel arbitration is warranted, the Court having been presented with undisputed evidence that the dispute among the parties is arbitrable. However, the Court is restricted by 9 U.S.C. § 4 to compel arbitration only within this district. Port Erie Plastics, Inc. v. Uptown Nails, LLC, 173 F. App'x 123, 128, (3d Cir. 2006) (finding that following Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc., 499 F.2d 1391, 1394 (3d Cir. 1974), "the majority of district courts . . . have held that they lacked authority to compel arbitration at all, even in their own districts, when the agreement specifies that arbitration is to take place in a different venue," yet finding no error where the district court ordered an arbitration to proceed within its district, despite the forum selection clause of the arbitration agreement.)[4]  Moreover, the Court lacks the authority to dismiss (or to stay) an arbitration unless it is for the reason that a dispute is not arbitrable. See Century Indemnity Co. v. New England Reinsurance Corp., 2004 WL 1813209, at * 1 (E.D. Pa. Jul. 19, 2004).

Thus, although the Court certainly recognizes that "principles of efficiency strongly favor a single arbitration panel's determination of whether consolidation of the reinsurance claims is

---

[4]As discussed in the Court's August 25, 2006 Memorandum and Order, (Docket No. 20 at 4-5), the language of 9 U.S.C. § 4 is somewhat paradoxical inasmuch as it permits a party to an arbitration agreement to request, and a federal court to issue, an order compelling arbitration "in the manner provided for in the agreement," yet also states that the arbitration "shall be within the district in which the petition for an order directing such arbitration is filed."

appropriate," <u>Markel Int'l Ins. Co. V. Westchester Fire Ins. Co.</u>, 442 F. Supp. 2d 200, 204 (D.N.J. 2006), the combination of statutory directives and case law together with the parties' contractual agreement compel a distinctly inefficient conclusion here. Namely, the Court sees itself as left only with the conclusion that all four arbitration panels must proceed. This means that unless these two sophisticated business litigants can sensibly jointly design a procedural roadmap, the panels will have to agree upon a reasonable solution as to which panel must decide the issues.

### IV.    CONCLUSION

For the foregoing reasons, Argonaut's and Century's petitions are both denied. An Order consistent with this Memorandum follows.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
Gene E.K. Pratter, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARGONAUT INSURANCE COMPANY, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| CENTURY INDEMNITY COMPANY, | : | |
| AS SUCCESSOR TO INSURANCE COMPANY | : | |
| OF NORTH AMERICA, | : | |
| Respondent. | : | NO. 05-5355 |

**O R D E R**

AND NOW, this 5th day of September, 2007, upon consideration of Argonaut Insurance Company's Petition to Compel Arbitration and Dismiss Arbitration (Doc. No. 1) and Century Indemnity Company's Response to Argonaut's Petition to Compel and Dismiss Arbitration and Cross-Petition to Compel Appointment of an Umpire in Arbitration Proceedings (Doc. No. 22), and the parties' respective replies,

**IT IS HEREBY ORDERED**, that:

1. Argonaut's Petition (Doc. No. 1) is **DENIED**;

2. Century's Petition (Doc. No. 22) is **DENIED**.

3. The four arbitration proceedings commenced by the parties shall proceed, including the arbitration panels' consideration and resolution of the issues as to whether the fourth demand for arbitration operated to end, consolidate or otherwise subsume the preceding three demands for arbitration.

4.	The Clerk of Court is directed to mark this case closed for all purposes, including statistics.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
Gene E.K. Pratter, J.